UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| COMPASS-CHARLOTTE 1031, LLC, | Case No.: 1:23-cv-1588 (MAD/CFH) |
| Plaintiff, | |
| -against- | |
| PRIME CAPITAL VENTURES, LLC | **COMPLAINT** |
| Defendant. | |

---

Plaintiff Compass-Charlotte 1031, LLC ("Compass-Charlotte"), through its attorneys, Hinckley, Allen & Snyder LLP, for its Complaint against Defendant Prime Capital Ventures, LLC ("Prime") alleges as follows:

## PRELIMINARY STATEMENT

1. Compass-Charlotte brings this action for damages it suffered in connection with the breach of a line of credit agreement with Defendant Prime, including, but not limited to, nearly $16 million it delivered to Prime via wire transfer, that Prime has no right to retain, and which Prime now refuses to return to Compass-Charlotte.

2. Compass-Charlotte wired $15,902,250.00 to Prime to fund a reserve account to serve as an Interest Credit Account ("ICA") pursuant to a Development Line of Credit Agreement ("LOC Agreement") between Prime, as lender, and Compass-Charlotte, as borrower.

3. Pursuant to the LOC Agreement, Prime was to provide a line of credit loan to Compass-Charlotte in the maximum amount of $79,511,250.00.

4. Upon information and belief, however, Prime never had sufficient capital to fund the loan and/or never intended to fund the loan.

1

5. The LOC Agreement was terminated by Compass-Charlotte, and Prime is required to return the $15,902,250.00 payment to Compass-Charlotte. Yet Prime refuses to do so without justification or explanation.

6. It is undisputed, and Prime has acknowledged, that the $15,902,250.00 in question belongs to Compass-Charlotte.

7. Compass-Charlotte has also learned of other similarly-situated individuals or entities that have entered into similar agreements with Prime. Like Compass-Charlotte, these victims advanced millions of dollars to Prime as a purported ICA deposit. Prime never funded their loans, and Prime did not return the ICA deposit or did so only when threatened or presented with legal action.

**PARTIES**

8. Compass-Charlotte is a limited liability company with a principal place of business in Greenville, North Carolina.

9. The sole member of Compass-Charlotte is Compass Landing Apartment Homes, LLC, a limited liability company with a principal place of business in Newport, North Carolina.

10. The sole member of Compass Landing Apartment Homes, LLC is Exempt Trust f/b/o Thomas F. Taft, Sr. under Article IV(D) of the Helen Fleming Taft Revocable Living Trust, dated 11/14/2000 ("Exempt Trust").

11. The Trustee of Exempt Trust is Thomas F. Taft, Sr., a North Carolina resident.

12. Upon information and belief, Prime is a Delaware limited liability corporation with a principal place of business at 66 Pearl Street, Albany, New York.

13. Upon information and belief, the sole member of Prime is Kris Roglieri, a New York resident.

14. The website for Prime Commercial Lending, a Prime affiliate, states that "Kris [Roglieri] owns and operates Prime Capital Ventures which is a dedicated fund under Prime Commercial Lending to fund large commercial real estate, energy and infrastructure projects nationally and internationally."

15. Prime alleged in its complaint in the matter *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, Case No. 23-cv-207 (N.D.N.Y.), that "Prime is a citizen of the State of New York because Prime's sole member, Kris Roglieri, is a resident of the State of New York." *See id.*, Dkt. No. 1 at ¶ 2.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

17. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in the State of New York, continues to operate commercial enterprises in New York, and its contacts with New York are sufficient such that exercising jurisdiction over it would not offend traditional notions of fair play and substantial justice.

18. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b) because this is a district in which a substantial part of the events or omissions giving rise to the claims occurred, and in which Defendant is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

19. Prime claims that it "is a dedicated fund under Prime Commercial Lending to fund large commercial real estate, energy and infrastructure projects nationally and internationally."

20. Prime holds itself out as a reputable lender to borrowers like Compass-Charlotte.

21. Upon information and belief Prime improperly uses purported "advance interest payment" funds (the ICAs) provided by borrowers for Prime's benefit.

22. On or about March 27, 2023, Prime represented in a Commitment to Fund Letter to Compass-Charlotte that Prime had sufficient capital to fund a loan in excess of $75 million via a line of credit.

23. Based upon that representation, on or about April 24, 2023, Prime, as lender, and Compass-Charlotte, as borrower, entered into a Development Line of Credit Agreement ("LOC Agreement").

24. The purpose of the LOC Agreement was for Compass-Charlotte to obtain a $79,511,250.00 line of credit to finance the construction of a multifamily development, located on Compass-Charlotte's real property at 1351 E. Woodlawn Road, Charlotte, North Carolina 28209.

25. In entering the LOC Agreement, Compass-Charlotte relied on the following statement in Section 10.12 of the LOC Agreement: "Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fully fund the LOC in the full amount of [$79,511,250.00]."

26. Under the LOC Agreement, Compass-Charlotte was required to fund a $15,902,250.00 reserve account with Prime to serve as an Interest Credit Account, for the exclusive purpose of satisfying interest payments under the LOC Agreement. As Section 3.6 of the LOC Agreement provides, in relevant part, "*[a]ll credits* to the Interest Credit Account *shall be used . . . for purposes of payment on interest payable on the Advances* as and when such interest payments are due and payable." (emphasis added).

27. On April 27, 2023, Compass-Charlotte wired to Prime $15,902,250.00, consistent with the wire instructions provided to it by Prime, to Prime's account at Citi Bank N.A., 388 Greenwich Street, New York, New York (the "ICA Payment").

28. Prime received the ICA Payment in its Citi Bank account.

29. Prime never disclosed to Compass-Charlotte that the ICA Payment would leave the Citi Bank account.

30. Prime led Compass-Charlotte to believe that the ICA Payment would remain in the Citi Bank account, so that it would be available to satisfy the interest payments due on the loan or available to be returned to Compass-Charlotte upon termination in the event the loan was not funded.

31. In making the ICA Payment, Compass-Charlotte relied upon, among other things, the provision of the LOC Agreement requiring Prime to establish an Interest Credit Account where the ICA Payment would be deposited, and Section 3.5 of the LOC Agreement, providing that: "[i]nterest on the outstanding principal balance of Advances under the LOC shall be paid from the Interest Credit Account at the rate and at the times set forth in the Promissory Note."

32. Compass-Charlotte satisfied all conditions precedent to receiving Advances under the LOC, which Prime does not dispute.

33. Prime ultimately did not fund the line of credit, notwithstanding Compass-Charlotte's willingness and ability to close on the loan.

34. Section 13.7(a) of the LOC Agreement provides:

So long as all conditions precedent to an Advance have been met pursuant to the terms of this Agreement, if Lender fails to fund the First Advance in accordance with the terms and conditions of this Agreement and the Promissory Note, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment. Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which

is attached hereto as Exhibit F (the "Termination Letter"), to Lender by certified mail. Upon receipt of such notice, Lender shall have thirty (30) international business-banking days from the date of receipt ("Refund Period") within which to return the ICA Payment to Borrower.

35. Following months of delays, excuses, and failures to communicate, Prime failed to fund the First Advance to Compass-Charlotte.

36. Accordingly, on or about October 27, 2023, Compass-Charlotte sent Prime a notarized termination letter in which Compass-Charlotte exercised its right to terminate the LOC Agreement and requested the refund of the ICA Payment ("Termination Letter").

37. In the Termination Letter, Compass-Charlotte specifically instructed Prime to wire $15,902,250.00 to Compass-Charlotte pursuant to Section 13.7 of the LOC Agreement.

38. On or about November 1, 2023, Compass-Charlotte, Kris Roglieri, and Prime broker Kimberly Humphrey had a phone call.

39. During the call, Compass-Charlotte learned that its nearly $16 million ICA Payment was no longer in the Citi Bank account where it was wired, but instead, Mr. Roglieri and Ms. Humphrey claimed it had been transferred to an account at the Royal Bank of Canada ("RBC") owned by an undisclosed, third-party hedge fund. Prime told Compass-Charlotte it was in discussions with RBC to have the money returned.

40. This was the first time that Prime disclosed that the ICA Payment had been transferred to a foreign bank account owned by a hedge fund.

41. Among other things, Compass-Charlotte requested that Roglieri and Prime provide an account statement reflecting that the ICA Payment was held in an account at RBC. Compass-Charlotte also asked for confirmation that RBC had received notice of Compass-Charlotte's termination of the LOC Agreement, that a third-party hedge fund had asked RBC to release the

funds, and confirmation of any communications between RBC and Prime on any material issues or delays in the return of the ICA Payment funds.

42. Yet, as of the filing of this Complaint, Compass-Charlotte has not received *any* documentation reflecting that its ICA Payment is currently being held in an account at RBC. Neither Roglieri nor Ms. Humphrey have provided any explanation as to why such documentation is unavailable. Instead, both have repeatedly misled Compass-Charlotte by promising that such documentation would be provided imminently.

43. Prime concedes that the full ICA Payment is due and owing to Compass-Charlotte.

44. Upon information and belief, Prime transferred the monies to an undisclosed hedge fund in order to benefit from the interest and appreciation from the unauthorized use and retention of Compass-Charlotte's money.

45. Indeed, upon information and belief, Prime never intended to limit the use of the ICA Payment to purposes of payment of interest, but instead, intended, despite express assurances to the contrary, to use the monies to accrue interest and appreciation for Prime's benefit.

46. Upon information and belief, Prime never intended to advance funds to Compass-Charlotte under the LOC Agreement. Instead, upon information and belief, the LOC Agreement, and promises to advance funds under that agreement, were intended to induce Compass-Charlotte into forwarding the ICA Payment for Prime to use for its own benefit.

47. Upon information and belief, Prime has engaged in virtually identical conduct several times in the last two years, as evidenced by the allegations in similar lawsuits filed across the country. *See, e.g.*, *Sturm v. Prime Capital Ventures, LLC*, 23-cv-01033 (N.D.N.Y.); *The Lion Group DFW, LLC v. Prime Capital Ventures*, LLC, 23-DCV-341617 (Bells Cnty., Tex.); *Camshaft*

7

*CRE 1 LLC v. Prime Capital Ventures, LLC*, 2023-023173-CA-01 (Miami-Dade Cnty., Fla.); *526 Murfreesboro, LLC v. Prime Capital Ventures*, 23-cv-01239 (D. Tenn.).

48. As of the filing of this Complaint, Prime has not returned the $15,902,250.00 it received from Compass-Charlotte for the ICA as required under the Termination Letter and the LOC Agreement.

49. Prime has acknowledged it owes the $15,902,250.00 ICA payment to Compass-Charlotte.

50. Prime has repeatedly represented to Compass-Charlotte that it would return the ICA Payment to Compass-Charlotte, along with a $50,000 due diligence payment made by Compass-Charlotte, prior to execution of the LOC Agreement.

51. Prime has no justification to retain the $15,902,250.00 ICA Payment, and upon information and belief, Prime continues to enrich itself from its unlawful investment of Compass-Charlotte's money with the hedge fund as if Compass-Charlotte's money was its own.

52. Compass-Charlotte brings this action for the immediate payment of all sums due and owing to it from Prime.

## COUNT ONE: BREACH OF CONTRACT
### (New York & North Carolina law)

53. Compass-Charlotte incorporates paragraphs 1-52 above as though set forth fully herein.

54. The LOC Agreement is a valid contract.

55. Compass-Charlotte performed its obligations under the LOC Agreement.

56. Prime breached the LOC Agreement by failing and refusing to make payment to Compass-Charlotte in the amount of $15,902,250.00, after Compass-Charlotte exercised its right to terminate the LOC Agreement pursuant to Section 13.7 of the LOC Agreement.

57. Prime further breached the LOC Agreement by using the ICA amounts for purposes other than payment of interest, in violation of Section 3.6 of the LOC Agreement.

58. Prime's breach has damaged Compass-Charlotte in an amount to be determined at trial, but believed to be in excess of $15,902,250.00, plus interest.

### COUNT TWO: UNJUST ENRICHMENT
### (New York & North Carolina law) (in the alternative)

59. Compass-Charlotte incorporates paragraphs 1-52 above as though set forth fully herein.

60. This is a cause of action for unjust enrichment in the alternative to Count One above.

61. Compass-Charlotte conferred a benefit on Prime by making the $15,902,250.00 payment to Prime. That payment was not offered officiously or gratuitously.

62. By retaining the $15,902,250.00 without justification, Prime has been enriched at Compass-Charlotte's expense.

63. It would be inequitable to permit Prime to retain Compass-Charlotte's $15,902,250.00.

64. Prime must pay Compass-Charlotte the amount of the benefit conferred upon it by Compass-Charlotte.

65. Accordingly, Compass-Charlotte has suffered damages in an amount to be determined at trial, but believed to be in excess of $15,902,250.00, plus interest.

### COUNT THREE: CONVERSION
### (New York & North Carolina law) (in the alternative)

66. Compass-Charlotte incorporates paragraphs 1-52 above as though set forth fully herein.

67. This is a cause of action for conversion in the alternative to Count One above.

68. Prime has intentionally and without authority exercised control over Compass-Charlotte's property and has refused to return Compass-Charlotte's property.

69. The $15,902,250.00 from the ICA reserve account belongs to Compass-Charlotte.

70. Prime has no authority in law or equity to retain Compass-Charlotte's $15,902,250.00.

71. Prime has unlawfully exercised dominion over Compass-Charlotte's $15,902,250.00, in derogation of Compass-Charlotte's rights.

72. Compass-Charlotte has demanded the return of its money and Prime has refused.

73. Accordingly, Compass-Charlotte has suffered damages in an amount to be determined at trial, but believed to be in excess of $15,902,250.00, plus interest.

### COUNT FOUR: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.C.G.S. 75-1.1, *et seq.* (the "UDTPA") (North Carolina law)

74. Compass-Charlotte incorporates paragraphs 1-52 above as though set forth fully herein.

75. As described in the Complaint, Prime has engaged in unfair and deceptive conduct in violation of N.C.G.S. 75-1.1, *et seq*. Upon information and belief, these unfair and deceptive acts and practices include, but are not limited to, taking and using Compass-Charlotte's ICA payments for Prime's benefit rather than for the payment of interest, and deceiving Compass-Charlotte about the location of the funds and about Prime's intent and ability to return such funds. Such acts and practices violate the UDTPA because they are deceptive, immoral, unethical, oppressive, unscrupulous, and substantially injurious and involve conduct external to the LOC Agreement.

76. As described in this Complaint, the acts and practices by Prime are in or affecting commerce in North Carolina.

77. As described in this Complaint, the acts by Prime present substantial aggravating circumstances. This includes, but is not limited to, Prime's pattern of identical misconduct with similarly situated borrowers.

78. Prime's actions proximately caused Compass-Charlotte actual damages in the amount in excess of $15,902,250.00.

79. Pursuant to N.C.G.S. § 75-16, Compass-Charlotte is entitled to trebling of its actual damages.

80. Pursuant to N.C.G.S. § 75-16.1, Compass Charlotte is entitled to recover attorney's fees in this action.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Compass-Charlotte 1031, LLC respectfully demands judgment in this action as follows:

A. Awarding judgment for Plaintiff Compass-Charlotte and against Defendant Prime in an amount to be determined at trial, but not less than $15,902,250.00, plus other damages which continue to accrue factoring in all interest, costs and expenses, and such award shall be trebled under N.C.G.S. § 75-16;

B. Awarding attorneys' fees, costs, and disbursements of this action pursuant to, *inter alia*, N.C.G.S. § 75-16.1; and

C. Awarding such further relief as the Court deems just and proper.

DATED:  December 15, 2023
        Albany, New York                    **HINCKLEY, ALLEN & SNYDER LLP**

                                    By:    */s/ Christopher V. Fenlon*
                                           Christopher V. Fenlon
                                           Kieran T. Murphy
                                           30 South Pearl St., Suite 901
                                           Albany, NY 12207-3492
                                           T: 518-396-3100
                                           F: 518-396-3101
                                           E: cfenlon@hinckleyallen.com
                                              kmurphy@hinckleyallen.com

                                           *Attorneys for Plaintiff
                                              Compass-Charlotte 1031, LLC*